# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| BLAIN LYNN CHAMBERS, | Cause No. CV 10-00014-BLG-RFC-CSO |
| Plaintiff, | ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS COMPLAINT |
| vs. | |
| STACEY SAMPSON, et al., | |
| Defendant. | |

Pending is Plaintiff Blain Lynn Chambers's Motion for Leave to Proceed in forma pauperis (Court Doc. 1), proposed Complaint (Court Doc. 2), Amended Complaint (Court Doc. 4), and Motion to Introduce Additional Evidence (Court Doc. 5).

Based upon the sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2), the Court will grant the motion to proceed in forma pauperis, grant the motion to introduce additional evidence, and recommend the dismissal of the Complaint for lack of subject matter jurisdiction.

## I.  MOTION TO PROCEED IN FORMA PAUPERIS

Chambers submitted the form Application to Proceed Without Prepayment of Fees and Affidavit wherein he indicates he made $35,000 last year but has not worked since December.  He has $125.00 in his bank accounts and has monthly expenses of $950.00.  The Court finds this application to be sufficient to make the showing required by 28 U.S.C. § 1915(a).  Because it appears Chambers lacks sufficient funds to prosecute this action, the Motion to Proceed in Forma Pauperis will be granted.

The Complaint shall be deemed filed as of the date that the Motion to Proceed in Forma Pauperis was filed and the proposed Complaint delivered to the Clerk of Court.  See Loya v. Desert Sands Unified Sch. Dist., 721 F.2d 279, 280-81 (9th Cir. 1983); see also U.S. v. Dae Rim Fishery Co., 794 F.2d 1392, 1395 (9th Cir. 1986) (concluding complaint constructively filed when delivered to clerk of court).

## II.  SCREENING PER 28 U.S.C. § 1915(e)(2)

### A.  Standard

A complaint filed by any person proceeding in forma pauperis

pursuant to 28 U.S.C. § 1915(a) is subject to a mandatory and sua

sponte review and dismissal by the Court to the extent the claims are

frivolous, malicious, fail to state a claim upon which relief may be

granted, or seek monetary relief from a defendant immune from such

relief.  28 U.S.C. § 1915(e)(2); Calhoun v. Stahl, 254 F.3d 845, 845 (9th

Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited

to prisoners."); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000)

(en banc).  Prior to its amendment by the Prison Litigation Reform Act,

the former 28 U.S.C. § 1915(d) permitted sua sponte dismissal of only

frivolous and malicious claims.  Lopez, 203 F.3d at 1130.  The amended

28 U.S.C. § 1915(e)(2), however, mandates that the Court review a

complaint filed pursuant to the forma pauperis provisions of section

1915.  The Ninth Circuit has held:  "[S]ection 1915(e) not only permits,

but requires a district court to dismiss an in forma pauperis complaint

that fails to state a claim."  Lopez, 203 F.3d at 1127.

A complaint is frivolous, if it "lacks an arguable basis either in

law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827,

1831-32, 104 L.Ed.2d 338 (1989).  A complaint fails to state a claim

upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotation omitted).

In addition, Rule 12 of the Federal Rules of Civil Procedure provides that a court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action. See Fed.R.Civ.P. 12(h)(3); Snell v. Cleveland, Inc., 316 F.3d 822 (9th Cir. 2002).  This Court finds it lacks subject matter jurisdiction over the claims raised herein and therefore will recommend the dismissal of this action without prejudice.

B.  Parties

Plaintiff Blain Lynn Chambers is a citizen of Montana residing in Billings, Montana.  He represents himself in this matter.  Mr. Chambers also lists "J.P.K. (minor child)" as a plaintiff.  Chambers, as a pro se litigant, cannot represent anyone but himself.  See McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1966).  Even assuming that J.P.K. is Chambers's son, Chambers cannot represent him in this legal

action.  Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997)

("a parent or guardian cannot bring an action on behalf of a minor child

without retaining a lawyer.").  Mr. Chambers is the sole plaintiff in this

action.

Chambers names as Defendants Stacey Sampson, an assistant

public defender; Richard Helm, Deputy Yellowstone County Attorney;

Damon Gannett, an attorney in Yellowstone County; Lu-Anne Nessan,

an employee of the Montana Department of Public Health and Human

Services (DPHHS) in Billings; Roxanne Roller, a DPHHS supervisor in

Billings; Christa Lee Anderson, a DPHHS employee in Helena;

Kennedy Kindness, J.P.K.'s mother; and "Foster Mother 'Frannie' aka

Mrs. Cheeseburger."

C.  Facts as Alleged

Chambers alleges he met Kennedy Kindness in 2005.  Months

later Kindness contacted Chambers informing him that he was the

father of her unborn child and that the State was going to seize the

child as soon as it was born.  Chambers asked Kindness to contact him

when she went into labor and he would come to the hospital and take

custody of the child.  Kindness never called.  Chambers was contacted

by DPHHS in 2006 and told Kindness wanted to give the child up for

adoption.  Chambers took a paternity test and was found to be the

biological father.  He demanded custody on June 26, 2007.

Thereafter he contends that he was lied to by DPHHS, was

subjected to a hostile visitation environment when he visited his son,

and was subjected to harassment and a "quack 'treatment plan'"

involving random drug testing and unannounced visits to his home.  He

also alleges Defendant Neesan sexually harassed him during one visit.

At some point Chambers was deployed to Iraq and Afghanistan.

While overseas, his neighbor Stacey Sampson, who he refers to as

opposing counsel, suspected his fiancé was pregnant and reported this

to DPHHS.  He and his fiancé then started getting threatening letters

from DPHHS threatening to take away their unborn child.

Chambers contends that while overseas, Judge Baugh approved

the adoption of his son by the "state approved" foster mom.  He alleges

he was not notified of the Court's decision.

According to a DPHHS memorandum to Governor Schweitzer

which Chambers attached as additional evidence, Chambers's parental

rights were terminated in the Montana Thirteenth Judicial District,

Yellowstone County in Cause No. DN 06-075.  The Order was signed by

Judge G. Todd Baugh on January 11, 2010.  (Court Doc. 5-1, p. 3).

This DPHHS memorandum indicates the January 11, 2010 Order

states as follows:

> [A] hearing on the Petition for Permanent Legal Custody,
> Termination of Parental Rights, and Right of Consent to Adoption
> filed by Richard Helm, Deputy Yellowstone County Attorney, on
> behalf of the Montana Department of Public Health and Human
> Services, Child and Family Services Division (hereinafter "the
> Department"), was conducted on November 2, 2009. .... Blain
> Lynn Chambers, (hereinafter "Blain Chambers"), the natural
> father, did not appear, but was personally served by the
> Yellowstone County Sheriff on August 21, 2009, and was
> represented by Mike Yasenak, on behalf of his attorney, Fred
> Snodgrass.

Id.

Chambers contends he was never contacted by anyone regarding

the hearing and was purposely excluded from the hearing.  He asserts

he has not been formally notified of the disposition of his son.  (Court

Doc. 5, p. 2).

D. Claims Asserted

Chambers alleges Defendants conspired to deprive him of his civil rights guaranteed under the First, Fifth, and Fourteenth Amendments to the United States Constitution.  He alleges oppression under color of law, sexual harassment, gender discrimination, a hostile visitation environment, trafficking in persons, kidnapping, and fraud.

The gist of Chambers's claims is that Defendants conspired to deny him custody of his newborn son.  He seeks custody of his son, an end to these oppressive practices, an apology from the State of Montana, appropriate disciplinary action for the offenders, punitive damages in the amount of fifteen million dollars, and general damages in the amount of one-hundred and fifty million dollars.

E.  Subject Matter Jurisdiction

The first question that must be answered is whether the Court has subject matter jurisdiction over Chambers's claims.  Federal courts, unlike state courts, are courts of limited jurisdiction and can only adjudicate those cases that the United States Constitution or Congress authorizes them to adjudicate.  Kokkonen v. Guardian Life Ins. Co.,

511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).  Congress

has authorized federal jurisdiction in cases that present a federal

question as set forth by 28 U.S.C. § 1331, and cases in which there is

complete diversity of citizenship and the amount in controversy exceeds

$75,000 as set forth by 28 U.S.C. § 1332.

A party seeking to invoke federal subject matter jurisdiction has

the burden of establishing that jurisdiction exists.  Data Disc, Inc. v.

Systems Technology Associates, Inc., 557 F.2d 1280 (9th Cir. 1977).

Therefore, Chambers must make a prima facie showing of subject

matter jurisdiction in order to maintain his claims.  Fields v. Sedgwick

Associated Risks, Ltd., 796 F. 2d 299, 301 (9th Cir. 1986).

### 1.  Diversity Jurisdiction

Chambers failed to allege and cannot establish complete diversity

of citizenship because he and at least one of the named Defendants are

citizens of the State of Montana.  See 28 U.S.C. § 1332.  Even if

Chambers could establish diversity of citizenship, there is a domestic

relations exception to federal diversity jurisdiction which "divests the

federal courts of power to issue divorce, alimony, and child custody

decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The Supreme Court in Ankenbrandt relied on its earlier ruling in In re Burrus, 136 U.S. 586, 594 (1890), in which the Court held void a writ issued by a Federal District Court to restore a child to the custody of the father.

2. Federal Question Jurisdiction

Chambers alleges claims arising under the Constitution, laws or treaties of the United States, but the Court lacks federal subject matter jurisdiction pursuant to the Rooker-Feldman doctrine and the Younger abstention doctrine.

Chambers seeks custody of his son, something this Court cannot grant because it is a matter of state law. The United States Supreme Court held long ago that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." Ex parte Burrus, 136 U.S. 586, 593-594, 10 S.Ct. 850, 34 L.Ed. 500 (1890); see also Mansell v. Mansell, 490 U.S. 581, 587, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) ("[D]omestic relations are preeminently matters of state law"); Moore v.

Sims, 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) ("Family

relations are a traditional area of state concern").  A challenge to a

custody determination does not state a federal claim.

### a.  Rooker-Feldman Abstention

The Rooker-Feldman doctrine provides that federal district courts

lack jurisdiction to review cases in which the plaintiff complains of

injuries caused by state court judgments rendered before the federal

district court proceedings commenced and inviting federal district court

to review and reject those state judgments.  Exxon Mobil Corp. v. Saudi

Basic Industries Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d

454 (2005).  Federal district courts generally lack the authority to

review state judgments pursuant to 28 U.S.C. § 1257, since only the

United States Supreme Court has such jurisdiction.  Rooker v. Fidelity

Trust Co., 263 U.S. 413, 415, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District

of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75

L.Ed.2d 206 (1983).  A plaintiff cannot appeal state court cases directly

to United States district courts, nor can they bring federal claims that

would ask district courts to pass judgment on state court findings.  This

doctrine "recognizes the implicit statutory structure established by Congress, which has determined that the United States Supreme Court is the only federal court with jurisdiction to hear appeals from state courts." Maldonado v. Harris, 370 F.3d 945, 949 (9th Cir. 2004).

"If the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding . . . then the district court is in essence being called upon to review the state-court decision." Feldman, 460 U.S. at 483.  A federal district court has no jurisdiction "over challenges to state-court decisions, in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional." Feldman, 460 U.S. at 486.  "This rule applies even [when] . . . the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights." Id. at 486 (internal citation omitted).

Judge Baugh on January 11, 2010 issued an Order terminating Chambers's parental rights.  See Court Doc. 5-1 at 4.  Any federal constitutional issue arising during the course of those proceedings is

inextricably intertwined with the state court's decision.  Even assuming

that Chambers's complaints are valid and everyone involved in the

child custody proceeding was conspiring against him, the appropriate

avenue for such complaints is through a direct appeal of the final

judgment to the Montana Supreme Court and/or the United States

Supreme Court.

Chambers's claims of denial of equal protection and due process

are clearly intertwined with the child custody issue.  What is less clear

are his allegations of sexual harassment.  Chambers alleges during a

home visit associated with the child custody matter, Lu-Anne Nessan,

an employee of DPHHS, began inquiring whether Chambers like "big

girls" and asking what kind of girls he was attracted to and his favorite

sexual positions.  According to Chambers, Nessan then told him she

had broken up with her boyfriend and they should meet after work

sometime.  Chambers alleged he felt uncomfortable because he did not

want to offend Nessan because she had so much power in his son's case.

To state a claim under § 1983, a plaintiff must allege facts

sufficient to show (1) a person acting "under color of state law"

committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C. § 1983; Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

A person acts under color of state law if they "exercise power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' "  West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1042, 85 L.Ed. 1368 (1941)).  Under this standard, "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the state.  Thus generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  West, 487 U.S. at 49-50, 108 S.Ct. at 2254-56.

The Ninth Circuit has applied the standards the Supreme Court enunciated in West to a case involving allegations of sexual harassment by a state officer.  In Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476

(9th Cir. 1991), two Hmong refugees from Laos sued Xiong, an employee of the Washington State Employment Security office for sexual harassment.  In this case, both plaintiffs came into contact with Xiong because of their need for employment and their understanding that Xiong and his department could be relied upon to supply jobs to Hmong refugees.  The jury could have found that each plaintiff was raped during a meeting with Xiong related to the provision of services pursuant to his state employment.  An expert in Hmong anthropology testified at trial that after fleeing from Laos, Hmong refugees have been entirely reliant on government aid, and as a result, are in awe of government officials.  Dang Vang, 944 F.2d at 480.

Based on this evidence, the Ninth Circuit concluded "the jury reasonably could have concluded that [Xiong] used his government position to exert influence and physical control over these plaintiffs in order to sexually assault them."  Dang Vang, 944 F.2d at 480.  Thus, the plaintiffs had sufficiently alleged and proved that Xiong acted under color of state law.

Chambers's Complaint alleges Defendant Nessan harassed him at

a time when she had some state-derived authority over Chambers's ability to gain custody of his son.  See West, 487 U.S. at 49-50, 108 S.Ct. at 2254-56 (holding that an individual is acting under color of state law when he is exercising his responsibilities pursuant to state law).  Thus, Chambers has sufficiently alleged state action with regard to his sexual harassment claims.

The question then becomes whether Nessan's conduct deprived Chambers of some right, privilege, or immunity protected by the Constitution or laws of the United States.  Chambers's allegations of a social worker propositioning him in his own home do not rise to the level of conduct found in the Dang Vang case.  In Dang Vang, the plaintiffs were raped.  Chambers has alleged only verbal suggestions.  Under these facts, the only possibly applicable constitutional provision would be the substantive due process clause of the Fourteenth Amendment.  In order to state a substantive due process claim a plaintiff must allege that the,  "behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" or "interferes with rights' implicit in the

concept of ordered liberty." County of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).  A rape of a refugee clearly meets this standard.  While certainly not to be condoned, verbal suggestions made on a single occasion do not rise to this level.

If the Court construes Nessan's alleged sexual harassment conduct in conjunction with the child custody proceeding (i.e., if Nessan sabotaged the child custody proceedings because her sexual advances were rejected), that could potentially rise to the level of a constitutional violation.  See Kelson v. City of Springfield, 767 F.2d 651 (9th Cir. 1985) (there is a recognized constitutional right to be free from governmental interference in the parent-child relationship).  But, any such a claim would be inextricably intertwined with the child custody/termination of parental rights case and thus barred by Rooker-Feldman.

This Court has no jurisdiction over what is, in fact, a defacto appeal of the substance of the state custody decision framed as a federal civil rights complaint.

b.  <u>Younger Abstention Doctrine</u>

If the state court action regarding the custody of Chambers's son is still pending (on appeal or otherwise), then Chambers's claims are barred by the Younger Abstention Doctrine which sets forth the policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff. <u>Younger v. Harris, 401 U.S. 37, 45, 91 S. Ct. 746, 751 (1971)</u>; see also <u>Gooding v. Hooper, 394 F.2d 146 (9th Cir. 1968), cert. denied 391 U.S. 917 (1968)</u>.  "As a matter of comity, federal courts should maintain respect for state functions and should not unduly interfere with the state's good faith efforts to enforce its own laws in its own courts." <u>Dubinka v. Judges of Superior Court of State of California for County of Los Angeles, 23 F.3d 218, 223 (9th Cir. 1994)</u> (citing <u>Younger, 401 U.S. at 43-44, 91 S. Ct. at 750</u>).  Therefore, Younger directs federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings.  <u>Martinez v. Newport Beach City, 125 F.3d 777, 781 (9th Cir. 1997) (overruled on other grounds Green v. City of Tucson, 255 F.3d 1086 (9th Cir. 2001)</u>)(citing

Younger, 401 U.S. at 40-41, 91 S. Ct. at 748-49) overruled in part on

other grounds by Gilbertson v. Albright, 381 F.3d 965 (9th Cir. 2004)(en

banc)).  When applicable, Younger abstention requires dismissal of the

federal action, not a stay.  San Remo Hotel v. City and County of San

Francisco, 145 F.3d 1095, 1103 (9th Cir. 1998).

    The federal courts may raise the issue of Younger abstention sua

sponte.  Martinez, 125 F.3d at 781 n.3 (citing Bellotti v. Baird, 428 U.S.

132, 143-44 n.10, 96 S. Ct. 2857, 2864-65 n.10, 49 L. Ed. 2d 844 (1976)).

See also San Remo Hotel, 145 F.3d at 1103 n.5 (noting that the district

and appellate courts can raise the issue sua sponte).

    The Ninth Circuit has stated that Younger abstention is

appropriate if (1) there are ongoing state judicial proceedings, (2) the

proceedings implicate important state interests, and (3) the state

proceedings provide the plaintiff with an adequate opportunity to raise

the federal claims.  Hirsh v. Justices of the Supreme Court of the State

of California, 67 F.3d 708, 712 (9th Cir. 1995); Martinez, 125 F.3d at

781; Gartrell Constr., Inc. v. Aubry, 940 F.2d 437, 441 (9th Cir. 1991);

Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S.

423, 432, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982).

Thus, if the child custody proceedings are still ongoing (conceivably an appeal could be pending), those proceedings would implicate important state interests regarding the custody of a child. See Burrus, 136 U.S. 586.   While Chambers is complaining he has not been treated fairly, he has an adequate opportunity in the state district and supreme court to raise federal questions and concerns that affect his constitutional and federal rights.   Accordingly, all three prongs of the Younger test have been satisfied.   If there are still ongoing state judicial proceedings, the Younger abstention doctrine would apply.

III.  <u>MOTION TO INTRODUCE ADDITIONAL EVIDENCE</u>

The Motion to Introduce Additional Evidence is construed as a Motion to Amend the Complaint.   Rule 15 of the Federal Rules of Civil Procedure allows a party to amend their pleading once as a matter of course within 21 days.   See Fed.R.Civ.P. 15(a)(1)(A).   Chambers's motion was filed within ten days of the filing of his Complaint. Accordingly, the motion will be granted.

IV.  <u>CONCLUSION</u>

    A.  <u>Leave to Amend</u>

For the reasons set forth above, Chambers cannot establish federal subject matter jurisdiction.  This is not a defect which could be cured by the allegation of other facts.  As such, Chambers's Complaint should be dismissed.

    B.  <u>Certification Regarding Appeal</u>

The Federal Rules of Appellate Procedure provide as follows:

> A party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
>> (A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed.R.App.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  The good faith standard is an objective one.

See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A plaintiff

satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977) (quoting Coppedge, 369 U.S. at 445).  For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. Neitzke, 490 U.S. at 325, 327; Franklin v. Murphy, 745 F.2d 1221, 1225 (9th Cir. 1984).  "[T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." Walker v. O'Brien, 216 F.3d 626, 631 (7th Cir. 2000).

The lack of federal subject matter jurisdiction here is so clear no reasonable person could suppose an appeal would have merit. Therefore, the Court should certify that any appeal of this matter would not be taken in good faith.

C.  Address Changes

At all times during the pendency of this action, Chambers SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date.  The notice shall not

include any motions for any other relief.  Failure to file a NOTICE OF

CHANGE OF ADDRESS may result in the dismissal of the action for

failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based upon the foregoing, the Court issues the following:

## ORDER

1.  Chambers's Motion to Proceed in Forma Pauperis (Court Doc. 1) is GRANTED.  The Clerk of Court shall waive prepayment of the filing fee.

2.  The Clerk shall edit the text of the docket entry for the Complaint to remove the word "LODGED" and the Complaint is DEEMED FILED on February 16, 2010.

3.  Chambers's Motion to Introduce Additional Evidence (Court Doc. 5) is GRANTED.

Further, the Court issues the following:

## RECOMMENDATION

1.  Chambers's Complaint (Court Doc. 2) and Amended Complaint (Court Doc. 4) should be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

2.  The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Fed.R.App.P. 24(a)(3)(A) that any appeal of this decision would not be taken in good faith.  The record makes plain there is no federal subject matter jurisdiction.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Chambers may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendation."

A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation.  Failure to timely file written objections may bar a de novo determination by the district judge and

may waive the right to appeal the District Court's order.   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

This Order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.Civ.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

DATED this 12th day of March, 2010.


/s/ Carolyn S. Ostby
United States Magistrate Judge